Rapaport Law Firm, PLLC | Attorneys at Law | 80 Eighth Avenue | Suite 206 | New York, NY 10011 | Tel 212.382.1600 | Fax 212.382.0920 | www.rapaportlaw.com

# Rapaport Law Firm

Marc A. Rapaport*
Tel  (212) 382-1600
Fax (212) 382-0920
mrapaport@rapaportlaw.com

*Member NY & NJ Bars

October 11, 2024

**BY ECF**

Honorable Sarah L. Cave
United States Magistrate Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

> **Re:     Anastacio Lopez v. JPD Restaurant LLC, et al.**
>            **Case No. 1:24-cv-00605(JPO) (SLC)**

Dear Judge Cave:

This firm represents Plaintiff, Anastacio Lopez ("Plaintiff" or "Mr. Lopez"), in the above-referenced matter, which involves claims for wage and hour violations. We write jointly with Defendants to request that the Court approve the settlement agreement (the "Agreement") reached by the parties herein as a fair and reasonable resolution of this matter.  The fully-executed Agreement is submitted simultaneously with this letter as Exhibit 1 hereto. Plaintiff's counsel further requests that the Court approve our firm's attorneys' fees and costs.

The Agreement reflects a desire by the parties to fully and finally settle Plaintiff's Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") claims.  The Agreement was reached through the parties' discussions overseen by the court-referred mediator, but prior to the mediation conference. The parties engaged in targeted pre-mediation discovery, which included Defendants' production of Plaintiff's time and wage records. Through this process, Plaintiff was able to calculate the approximate amount of his unpaid overtime wages, which provided an informed basis for the settlement.

## I.      Introduction.

As Plaintiff's claims arise, in part, under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, the Agreement must be approved by this Court. *See, Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). In evaluating whether a proposed settlement is fair and reasonable, "a court should consider the totality of circumstances including, but not limited to, the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their

Honorable Sarah L. Cave
United States Magistrate Judge
October 11, 2024

respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-336, (S.D.N.Y. 2012) (citations and quotation marks omitted). As set forth below, the parties believe that the Agreement satisfies all of the foregoing factors.

### II.      Summary of Plaintiff's Factual Allegations and Damage Calculations.

### 1.      Plaintiff's Overtime Claims and Calculations.

Mr. Lopez was a kitchen worker at Defendants' casual dining restaurant known as the Pig N' Whistle, 202 West 36th Street in Manhattan (the "Restaurant" or "Pig N' Whistle") from approximately 2009 until on or about October 9, 2023. Compl. ¶¶ 4, 39, 40 (ECF No. 1).

Plaintiff alleges that he was not paid premium overtime compensation of 1.5 times his regular hourly rate for overtime hours. Instead, Defendants paid Plaintiff his regular hourly rates (straight time) of pay for the hours he worked above the first forty each week. Compl. ¶¶ 43 – 45. Initially, Plaintiff was only able to ascertain the average number of hours he worked each week through his personal recollection. On this basis, the Complaint recited his approximate, weekly work schedules. Compl. ¶¶ 41, 42. Through targeted, pre-mediation discovery, the parties were able to determine the actual number of hours Plaintiff worked during virtually all of the FLSA and NYLL limitations periods. This, in turn, provided an informed basis for the parties' settlement. For example, during the time period 5/30/2021 through 1/1/2022, when Plaintiff's hourly rate of pay was $19, Plaintiff worked 428 hours of overtime. Based on the foregoing, Plaintiff calculates that he is owed $4,173 (half time rate of $9.75 times 428 hours) for unpaid overtime wages during that period, not including interest and liquidated damages. By way of further example, during the time period 6/5/2022 through 12/31/2022, when Plaintiff's hourly rate of pay was $22.00, Plaintiff worked 660 hours of overtime. Based on the foregoing, Plaintiff calculates that he is owed $7,260 (half time rate of $11.00 times 660 hours) for unpaid overtime wages during that period, not including interest and liquidated damages.

There are small periods of time for which Defendants records appear to be incomplete. For these limited time periods, Plaintiff relied on his estimates of the average amount of hours he worked each wake, based on his recollection. Through a combination of Defendants' records and his recollections, Plaintiff estimates that he could potentially recover a total of approximately $36,000.00 for unpaid overtime wages for the entire six-year NYLL limitations period, excluding liquidated damages and interest. However, there are disputed issues, including Defendants' contentions that they appropriately took meal credits and paid Plaintiff for lunch breaks. Plaintiff can provide the Court with a weekly, estimated damages chart if the Court believes this is necessary to ascertain the fairness of the parties' Agreement.

Honorable Sarah L. Cave
United States Magistrate Judge
October 11, 2024

   2.  **Wage Statement and Wage Notice Violations:**

Plaintiff also asserts claims for liquidated damages under the NYLL for Defendants'
failure to provide accurate wage statements. Plaintiff alleges that Defendants failed to provide
him with wage statements at the end of every pay period that correctly identified the name of the
employer; address of employer; rates of pay or basis thereof; regular hourly rate; whether paid by
the hour, shift, day, week, salary, piece, commission, or other; number of overtime hours
worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net
wages; and such other information as required by NYLL § 195(3). Plaintiff alleges that under
NYLL § 198(1-d), he is entitled to statutory damages of $250.00 per work week, up to a cap of
$5,000.00. Plaintiff also asserts claims for statutory damages for Defendants' failure to provide
him with wage notices at the time of hiring, and upon the changes to his salary.  Plaintiff's wage
notice and wage statement claims potentially add $10,000 to the value of his claims.

   III.    **Defendants' Position.**

Defendants produced payroll records during his employment from 2017 through the end
of his employment in 2023. From 2017 to 2021 the records were in handwritten journals. In 2022
and 2023 there are ADP records also showing the hours he was paid by check for his 40 hours
per week. The payroll journals show every day and hour plaintiff worked and what he was paid
by cash and check. The records showed plaintiff was paid by check for his first 40 hours and in
cash for hours worked over 40 at his straight time rate. So, Defendants agreed to pay plaintiff
what he is owed for the half time for his overtime hours based on his actual hours worked and
not plaintiff's recollections. Based on the records, Defendants contend that plaintiff is owed
$29,663 at most for his unpaid half-time.

Defendants also contend that Plaintiff's overtime calculations are inflated because
Defendants appropriately took meal credits under the New York Hospitality Industry Wage
Order.  Defendants further contend that they generally paid Plaintiff his hourly wages for his
uninterrupted meal breaks.  Based, in part, on the foregoing, Defendants allege that Plaintiff's
damage calculations are unrealistic.

Defendants further contend that they provided Plaintiff with the requisite information
regarding his wages, and that Plaintiff signed off on his hours worked and paid every week.
Defendants further assert that to the extent there were any wage violations, such violations would
not warrant liquidated damages because Defendants believed in good faith that they complied
with the law.

Finally, Defendants contend that two of the Defendants, namely Magee-Mahon Café Inc.
and John Mahon had no connection to the Pig N' Whistle location where Plaintiff worked, and
therefore were not his employers. On this issue, the Defendants produced corporate records and
tax returns showing that the restaurant locations are separate and do not have common
ownership.

Honorable Sarah L. Cave
United States Magistrate Judge
October 11, 2024

### IV.    The Agreement is Fair and Reasonable.

The parties represent to the Court that the settlement between the parties is a fair and reasonable resolution of a *bona fide* dispute reached as a result of negotiations between counsel who have extensive experience in wage and hour matters. As reflected in the attached Agreement, the parties have agreed to settle the case for the sum of Sixty-Four Thousand Dollars ($64,000.00) (the "Settlement Amount"). After deducting the requested amounts payable to Plaintiff's counsel for costs ($871.69) and legal fees ($20,832.34) ($64,000 - $871.69 = $63,128.31 x .33 = $20,832.34), Plaintiff is receiving Forty-Two Thousand Two Hundred Ninety-Five Dollars and Ninety-Seven Cents ($42,295.97), which exceeds his estimated, best-case valuation of his overtime claims, exclusive of liquidated damages and interest. This amount is approximately 51% of Plaintiff's potential recovery ($82,000.00) for unpaid wages, liquidated damages, and wage notice/statement violations.

The Settlement Amount is fair and reasonable in light of the uncertainties associated with establishing Plaintiff's precise amount of overtime hours.  *See, Beckert v. Rubinov*, 15 Civ. 1951 (PAE), 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015) (finding that the "amount [plaintiff] would receive under the Agreement ($29,557.97) is a substantial proportion of the maximum possible recovery he identifies ($114,700)"). Here, Plaintiff concluded that he may face challenges establishing the number of hours he worked during certain periods of his employment and uncertainties regarding Defendants' contention that Plaintiff was paid for periods of time when he took meal breaks.

The parties were able to reach an agreement before incurring the costs of depositions, motion practice and trial.  *See, Burgos v. San Miguel Transp., Inc.*, 2016 U.S. Dist. LEXIS 166248, *6, 2016 WL 7015760 (S.D.N.Y. Dec. 1, 2016) (citing the relatively early stage of the case as one of the factors supporting the fairness of a settlement that was substantially below the amount that plaintiff initially contemplated).

Plaintiff's counsel also notes that throughout the settlement discussions and prior to the execution of the Agreement, they thoroughly explained to Plaintiff the information required for him to make an informed decision concerning settlement. Among other things, Plaintiff was informed of the differential between the settlement amount and the potential damages he could be awarded if this matter proceeded to trial. These discussions were extensive, and they were in Spanish, Plaintiff's primary language. Plaintiff's decision to settle is voluntary and with full information of his options, including the potential risks and benefits of these options.

### V.    Plaintiff's Counsel's Application for Attorneys' Fees.

Under both the FLSA and NYLL, Plaintiff is entitled to recover attorneys' fees and costs. Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his or her own compensation did not have an adverse impact on the extent of relief counsel obtained for the client.  *See, Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012).

Honorable Sarah L. Cave
United States Magistrate Judge
October 11, 2024


Plaintiff's counsel represents Plaintiff on a contingent basis, pursuant to a retainer agreement that provides for attorneys' fees of one-third of the net recovery. A copy of Plaintiff's counsel's retainer agreement with Plaintiff is attached hereto as Exhibit 2. Our firm's time spent on this matter and the expenses that we reasonably incurred are set forth in the accurate and contemporaneous billing records attached hereto as Exhibit 3. Invoices/receipts for service of process are attached hereto as Exhibit 4.

Contingency fees of one-third are routinely approved in this Circuit. *See, Sierra v. Mid City Gym and Tanning LLC*, No. 16 Civ. 2892, 2017 WL 4862070 *4 (S.D.N.Y.  Oct. 25, 2017); *Gaspar v. Personal Touch Moving, Inc.,* No. 13 Civ. 8187, 2015 WL 7871036 *2 (S.D.N.Y. Dec. 3, 2015).  Of the total amount ($32,671.03) payable to Plaintiff's counsel, $871.69 is for expenses (primarily consisting of filing fees and service of process). The balance, $20,799.34, is for legal fees. The legal fees are thirty-three percent (33%) of the net settlement. All of the requested expenses were necessary for the prosecution of Plaintiff's claims.

The attorneys and staff at Rapaport Law Firm who were involved in this case, and whose time is reflected in the attached billing records, are:

### 1. <u>Marc Rapaport</u>

I am the managing member of Rapaport Law Firm, which began as my solo practice in 1995. I have more than twenty-five years of experience litigating employment matters on behalf of employees in New York.  I received a J.D. from Georgetown University Law Center in 1992. Thereafter, I worked as a Staff Attorney with the United States Department of Justice in Washington, D.C. I represent employees in a broad range of discrimination and wage/hour matters. I am an active member of the National Employment Lawyers Association and the National Employment Lawyers Association New York. I believe that my clients also benefit from my broader experience beyond the field of employment law, including my experience litigating commercial disputes in state and federal courts.

I have endeavored to represent immigrant workers who often find it difficult to obtain skilled legal representation.  My requested hourly rate of $450.00 has been approved by multiple judges in the Second Circuit. *See, Montalvo v. Arkar Inc.*, 2018 U.S. Dist. LEXIS 79667 at *5 (S.D.N.Y. May 10, 2018).

My wage and hour cases include, among others:  *Gaitan et al. v. 3808 Boston Road Car Wash, Inc., et al.* 08-cv-11137 (SDNY); *LeBlanc v. Soho House New York, LLC et al.*, 09-cv-07474 (SDNY); *Armas et al. v. SKYC Management LLC et al.*, 14-cv-6360 (SDNY); *Castillo et al. v.140 Ash Associates, LLC, et al.*, 16-cv-5216 (EDNY); *Deleg v. Croman Real Estate, Inc. et al.,* 16-cv-07762 (SDNY); *Contrera, et al. v. Langer, et al,* 16-cv-03851 (SDNY) ($7.4 Million wage settlement); *Flores, et al. v. Claremont Properties. LLC, et al.*, 17-cv-001316 (SDNY); *Feliz v. Parkoff Operating Corp., et al.*, 17-cv-07627 (SDNY); *Amadis v. New Castle Realty Servs., et al*, 17-cv-06693 (SDNY); *Montalvo, et al. v. Arkar, Inc. et al*, 17-cv-06693 (SDNY); *Romero v. 1829 Realty Associates, LLC et al.*, 17-cv-00662 (EDNY); *Mercedes v. Claremont*

Honorable Sarah L. Cave
United States Magistrate Judge
October 11, 2024

*Properties,* 18-cv-01268 (SDNY); *Valdovinos v. 9300 Realty Management Inc., et al.*, 18-cv-2102 (SDNY); *Ramirez v. Superior One Management Corp., et al.*, 19-cv-02287 (SDNY); *De La Rosa v. Chestnut Holdings of New York, Inc., et al.*, 19-cv-00286 (SDNY); *Ramirez v. Superior One Management Corp.*, 19-cv-02287 (SDNY); *Luna v. Marquis Realty Inc.,* 19-cv-01709 (SDNY); *Martinez, et al. v. Barberry Rose Mgmt Co., Inc., et al.*, 19-cv-06744 (EDNY); *Campos v. Aegis Realty Management Corp.*, 19-cv-02856 (SDNY); *Liz, et al. v. 5 Tellers Associates, L.P., et al*, 20-cv-00212 (EDNY); *Artiles v. Superior One Management Corp.*, 20-cv-1809 (SDNY); *Pichardo v. United Chelsea, LLC, et al.* 20-cv-4706 (SDNY); *Ramirez v. Arbeni Management Company, Inc.*, 21-cv-2759 (SDNY); *Acosta v. Superior One Management Corp.*, 21-cv-1163 (SDNY); *Trinidad v. 62 Realty, LLC, et al.*, 22-cv-00101 (SDNY); *De la Cruz v. Arbeni Management Company, Inc.*, 22-cv-00979 (SDNY); *Gomez, et al. v. Carroll Flats LLC*, 22-cv-01493 (EDNY); *Ramirez v. Citictore Asset Mgmt Inc., et al.*, 22-cv-03802.

2. **Karina Gulfo**

Karina Gulfo has been a paralegal at Rapaport Law Firm since August 2018.  Ms. Gulfo speaks fluent Spanish. Because of her language skills, Ms. Gulfo served a crucial and effective role in our firm's representation of Plaintiff. Ms. Gulfo has performed FLSA damage calculations in multiple FLSA/NYLL cases since she joined Rapaport Law Firm.   In this matter, Ms. Gulfo served as a primary point of contact for Mr. Lopez. Ms. Gulfo has played the same, crucial role for our firm's Spanish-speaking clients in at least a dozen other FLSA matters, including collective and class action cases involving hundreds of workers. Prior to joining our firm, Ms. Gulfo worked as a paralegal for a law firm in Bronx County, providing support in both criminal and civil matters. The hourly rate for Ms. Gulfo ($115.00) is amply justified by her experience.

We respectfully request that the Court approve the Agreement, as well as the amount of legal fees requested herein. Should Your Honor have concerns regarding this settlement, the parties are happy to discuss them. The parties thank the Court for its attention to this matter.

Respectfully yours,

/s/

Marc A. Rapaport

Encs. (Exhibits 1 – 4)

cc:   James J. Cutro, Esq. (*Via ECF only*)